IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DANIEL TAYLOR JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 119-069 |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Daniel Taylor Jordan appeals the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff protectively applied for SSI in June 3, 2016, alleging a disability onset date of March 1, 2014. Tr. ("R."), pp. 10, 152-157. Plaintiff was twenty-three years old at his alleged disability onset date and was twenty-eight years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 74. Plaintiff applied for benefits based on allegations of depression, bipolar disorder, and anxiety. R. 74, 88, 170. Plaintiff

has a high school education and no past relevant work history, but he has worked as a painter for general contractors, an overnight stocker at Wal-Mart, and de-boner for a food processing plant. R. 23, 170-71.

The Social Security Administration denied Plaintiff's application initially, R. 74-86, and on reconsideration, R. 88-103. Plaintiff requested a hearing before an ALJ, R. 117-119, and the ALJ held a hearing on April 25, 2018. R. 29-57. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Carroll H. Crawford, a Vocational Expert ("VE"). Id. On August 13, 2018, the ALJ issued an unfavorable decision. R. 10-24.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 3, 2016, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: acute grief disorder; generalized anxiety disorder with panic attacks; agoraphobia; conduct disorder; neurological disorder; and obesity (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in in 20 C.F.R. § 416.967(c), except he can perform simple, routine, repetitive tasks but not at a production rate pace.[1] He can make simple work related decisions and he must work in an environment where there are only occasional routine changes in the work setting and duties. The claimant can have occasional interaction with supervisors and co-workers but no interaction with the general public. He would need to miss two days per month on a consistent basis and be off

---

[1]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

task 5% of the workday in addition to regularly scheduled breaks.  The claimant has no past relevant work. (20 C.F.R. § 416.965).

5.      Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since June 3, 2016, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 10-24.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly (1) consider the medical source opinions; (2) comply with SR 00-4p and properly evaluate Plaintiff's ability to perform other work at step 5 of the sequential evaluation process; and (3) consider Plaintiff's subjective complaints.  See doc. no. 9 ("Pl.'s Br.").   The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed.  See doc. no. 10. ("Comm'r's Br.").

## II.      STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence,

or substitute its judgment for the Commissioner's.   Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).   Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.   Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).   Substantial evidence is "more than a scintilla, but less than a preponderance:   '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"   Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).   If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.   Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).   Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.   McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.   Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).   If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

### A.   The ALJ Properly Evaluated the Medical Source Opinions of Dr. Janit and Dr. Hayes

#### 1.   Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments."  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms."  Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).   Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations.  Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)).  When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence."  Phillips, 357 F.3d at 1238.

## 2.    Assigning Weight to Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford, 363 F.3d at 1159; Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) ("The ALJ is required to 'state with particularity the weight he gave different medical opinions and the reasons therefor.'").

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's records. Lewis, 125 F.3d at 1440; see also Phillips, 357 F.3d at 1241 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

<u>Forsyth v. Comm'r of Soc. Sec.</u>, 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)).

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. <u>See</u> 20 C.F.R. § 416.927(c)(1)-(2), (5). Under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); <u>see also</u> 20 C.F.R. § 416.927(d).

### 3.   The ALJ Properly Considered the Opinions of Dr. Janit and Hayes

Plaintiff argues the ALJ improperly considered the opinions of Eloise J. Hayes, D.O., and Adrian Janit, Ph. D. First, the only evidence in the record concerning Dr. Hayes are two letters to Plaintiff's probation officer about his ability to work and treatment records. R. 258, 334-37, 349-57. In the letters, Dr. Hayes states Plaintiff "is unable to work due to his condition therefore he is unable to pay Child Support at this time." R. 337. The ALJ had good cause for giving Dr. Hayes's opinion, as a treating psychiatrist, little weight. Dr. Hayes's letters are conclusory because they did not contain any medical reasoning for such a finding. R. 258, 337. The issue of whether Plaintiff can work is reserved to the Commissioner. <u>Lewis</u>, 125 F.3d at 1440; 20 C.F.R. § 416.927(d). Further, Dr. Hayes's treatment records only contained the diagnosis, prescription and symptoms of Plaintiff, which

were adequately discussed and considered by the ALJ.  See R. 19-21.  Thus, the ALJ had good cause to give Dr. Hayes's opinion little weight.  Lewis, 125 F.3d at 1440.

Second, the ALJ properly weighed Dr. Janit's opinion.  Dr. Janit examined Plaintiff once for two hours and diagnosed him with "Persistent Depressive Disorder, With Intermittent Major Depressive Episodes, With Current Episode, Mild, With Anxious Distress," and "Conduct Disorder, Unspecified Onset, Moderate."  R. 303-08.  Additionally, Dr. Janit provisionally diagnosed Plaintiff with two competing diagnoses of Schizoid Personality Disorder and Antisocial Persulfate Disorder, pending more formal testing.  R. 307.  Concerning the validity of his evaluation, Dr. Janit noted Plaintiff presented as an adequate reflection of Plaintiff's current functioning because his clinical presentation was consistent with Plaintiff's allegations and a rapport was fairly easy to establish.  R. 306.  In regards to Plaintiff's work-related limitations, Dr Janit found Plaintiff was "mildly to moderately limited" in understanding and carrying out instructions, "mildly limited" in maintaining attention and concentration, "probably markedly limited" in responding appropriately to coworkers, supervisors, and the general public, "probably moderately limited" in adhering to a work schedule and completing tasks in a timely fashion, and "moderately to markedly limited" in withstanding stresses and pressures associated with most work settings.  R. 307-08.

The ALJ gave Dr. Janit's opinion little weight because Dr. Janit's work limitations were based in part on Plaintiff's self-reports, which the ALJ stated made those parts of Dr. Janit's opinion outside "of the realm of being a medical source statement," and Dr. Janit reported "an essentially normal mental status."  R. 21-22.  Because Dr. Janit only examined

Plaintiff on one occasion and was not a treating physician, his opinion is not entitled to any special deference.  Beegle v. Soc. Sec. Admin., 482 F. App'x 483, 486 (11th Cir. 2012) (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir.1987)).  Further, the ALJ was correct in finding Dr. Janit's work-related limitations based on Plaintiff's subjective complaints were not an acceptable basis for a medical source opinion.  See R. 22; Huntley v. Soc. Sec. Admin., 683 F. App'x 830, 833 (11th Cir. 2017) (finding examining physician's recitation of claimant's limitations to be unreliable where limitations based on subjective complaints and did not include citation or analysis of medical examinations) (citing Sryock, 764 F.2d at 835).  Specifically, Dr. Janit found Plaintiff was "probably markedly limited" in responding appropriately to coworkers, supervisors, and the general public, but this limitation is clearly based solely on Plaintiff's self-reports because Dr. Janit only referred to Plaintiff's reports as the basis for this limitation.  R. 307.  Similarly, Dr. Janit only cited to Plaintiff's reports when he found Plaintiff was "probably moderately limited" in adhering to a work schedule and completing tasks in a timely fashion.  R. 307-08.

The ALJ's assignment of little weight to Dr. Janit's opinion is further buttressed by the fact he clearly read and considered everything contained therein.  The ALJ specifically recited the important findings and observations of Dr. Janit at step four.  R. 19.  Based on the ALJ's review of Dr. Janit's opinion, he found the examination to only amount to a "normal mental status evaluation." R. 21.  The reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore, 405 F.3d at 1211; Cornelius, 936 F.2d at 1145.  Thus, the ALJ properly assigned Dr. Janit's opinion little weight.

Plaintiff argues the ALJ failed to explain why he gave Dr. Janit's opinion little weight and the state consultants' opinions significant weight when the state consultants gave Dr. Janit's opinion great weight.  However, this argument misstates the state consultants' reliance on Dr. Janit.  In their reports, the state consultants only gave Dr. Janit's opinion great weight with respect to Dr. Janit's observations and impressions from the examination.  R. 81, 96.  Nowhere, do the state consultants state they gave great weight to the Dr. Janit's findings regarding Plaintiff's work-related limitations, which were based on Plaintiff's subjective complaints.

Plaintiff further argues the ALJ failed to explain the discrepancy between the state consultants' findings, where one consultant found Plaintiff had mild restrictions in activities of daily living and the other found moderate difficulties.  R. 80, 95.  However, Plaintiff fails to explain how this difference is significant enough to remand the ALJ's decision.  Further, the ALJ's findings show the state consultants' opinions were afforded significant weight based on their findings relevant to Plaintiff's RFC at Step Four.  R. 22.  Plaintiff's attempt to cite to the Paragraph B criteria under the medical listings at Step Three to invalidate the ALJ's opinion at Step Four is unpersuasive.  Also, Plaintiff argues an ALJ cannot base his decision solely on non-examining physicians.  However, it is clear from the record and the ALJ's decision, the ALJ based his decision on a multitude of sources including multiple treatment records, medical source opinions, Plaintiff's history, and Plaintiff's subjective complaints.  R. 10-24.

Lastly, Plaintiff argues the ALJ failed to note the consistency between Dr. Janit's observations and Dr. Hayes's treatment records, and Dr. Janit's finding that Plaintiff's clinical presentation was consistent with his allegations.  First, Plaintiff mischaracterizes Dr. Janit as a treating psychiatrist. The record is clear Dr. Janit only performed one consultative examination.

R. 303-08.  Second, the ALJ specifically cited Dr. Janit's observations of Plaintiff's symptoms as stated above and clearly considered Dr. Hayes's treatment records as indicated by the discussion of Plaintiff's prescriptions.  R. 19-22.  Although there may be consistency between the symptoms observed, because the ALJ clearly considered the record, the Court will not reweight the evidence as Plaintiff appears to be impliedly requesting.  Moore, 405 F.3d at 1211; Cornelius, 936 F.2d at 1145.  In sum, the ALJ considered all medical source opinions, and the decision to give the opinions of Drs. Janit and Hayes little weight is supported by substantial evidence.

### B.     The ALJ Complied with SSR 00-4p and Properly Relied on the VE's Testimony at Step Five

Plaintiff argues there a conflict between the ALJ's RFC determination that Plaintiff be limited to simple, routine, and repetitive tasks and the ALJ's finding Plaintiff can perform jobs at GED reasoning level two of the Dictionary of Occupational Titles ("DOT") that Plaintiff can perform.  More specifically, Plaintiff argues jobs at reasoning level two involve understanding detailed instructions, but Plaintiff's RFC is limited to only simple, routine tasks.  The Court disagrees there is a conflict.

At step five, the burden shifts to the SSA "'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)) (citing Bloodsworth, 703 F.2d at 1240).  "Although the burden temporarily shifts as step five 'the overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.'"  Id. (quoting Doughty v. Apfel, 245 F.3d 1274, 1280 11th Cir. 2001)).

In making the step five determination whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of her impairments, the ALJ may consider the testimony of the VE and data drawn from the DOT, of which the Social Security Administration takes notice.  Id. at 1360 (citing 20 C.F.R. § 416.966).   In relying on the testimony of a VE, the underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence.  McSwain, 814 F.2d at 619-20; Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).)  Where the VE's testimony is based on a hypothetical question including limitations from the RFC finding and the RFC is supported by the record evidence, the VE's testimony supports the ALJ's decision. Carroll v. Soc. Sec. Admin., Comm'r, 453. F. App'x 899, 894-95 (11th Cir. 2011).

Finally, "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT."  Washington, 906 F.3d at 1362.  Put another way, an ALJ has an affirmative duty to "identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision."  Id. at 1365.  Failure to do so means the ALJ's decision is not supported by substantial evidence.  Id. at 1362.

At the April 25th hearing, the ALJ posed the following hypothetical to the VE:

> There is no past relevant work.  [Plaintiff] is currently 27 years old with a high
> school grade or education. I'd like you to assume a hypothetical individual with
> the same age and education as that of the claimant with the following residual
> functional capacity: can lift and carry 50 pounds occasionally, 25 pounds
> frequently; can sit for six hours in an eight-hour shift. He can stand and/or walk
> for six hours in an eight-hour shift. His work would need to be limited to simple,
> routine, and repetitive tasks, but he cannot work at production rate pace. His work
> would need to be limited to simple work-related decisions and to environments in
> which [there is] only occasional interaction with supervisors and the coworkers
> and no interaction with the general public. In addition, he would need to miss two
> days of work per month on a consistent basis and he would need to be off task
> five percent of the workday in addition to regularly scheduled breaks.

R. 50-51.  The VE testified Plaintiff could work as an industrial cleaner (DOT 381.687-018),

warehouse worker (DOT 922.687-058), or hand packager (DOT 920.587-018), which all are

performed at reasoning level two. R. 51.  Level two reasoning requires the individual to "[a]pply

commonsense understanding to carry out detailed but uninvolved written or oral instructions"

and "[d]eal with problems involving a few concrete variables in or from standardized situations."

5 DOT, App. C, 1991 WL 688702.

Despite Plaintiff's assertion that reasoning level two jobs conflict with an RFC for

simple, routine tasks, the Eleventh Circuit has ruled otherwise.  In the Eleventh Circuit, a

limitation to simple, routine work does not preclude performance of jobs as high as a GED

reasoning code 3.  See Chambers v. Comm'r of Soc. Sec., 662 F. App'x 869, 873 (11th Cir.

2016) (per curiam) (reasoning level 3 and SVP of two shows job "requires, at a maximum, one

month of time to learn the techniques, acquire the information, and develop the facility for

average" job performance, making jobs consistent with unskilled work, needing little or no

judgment to do simple duties), overruled on other grounds, Washington, 906 F.3d at 1365;

Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793, 795-96 (11th Cir. 2011) (same).  Thus, there

is no conflict under SSR 00-4p between jobs with a reasoning level of two and an RFC requiring routine, simple, and repetitive tasks as here.

Plaintiff relies heavily on the Fourth Circuit decision in Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019), in his argument that there is an apparent conflict. However, in addition to only being persuasive authority, the Fourth Circuit issued a more recent decision in Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019), in which the Fourth Circuit held there was no conflict between reasoning level two and routine, repetitive tasks of unskilled work. The Fourth Circuit differentiated Thomas because the RFC there included the term "short" instructions, which was in direct conflict with detailed instructions of reasoning level two jobs. Id. However, the plaintiff in Lawrence, and similarly in the present case, have an RFC of simple, routine, and repetitive tasks, which the Fourth Circuit clearly held is not a conflict. Id. Accordingly, there is no apparent conflict between the RFC and the jobs the VE cited Plaintiff as being able to perform, and the ALJ properly relied on the VE's testimony.

## C.     The ALJ Properly Weighed Plaintiff's Subjective Complaints

### 1.     The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must

articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (per curiam) (citing 20 C.F.R. § 404.1529(c)(4)). However, as explained supra, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. See SSR 96-5p; see also 20 C.F.R. § 416.927(d).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Social Security Ruling 16-3p, clarifies:

> that subjective symptom evaluation is not an examination of an individual's character. . . .
>
> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .

SSR 16-3p, 2016 WL 1020935, at *14167 (orig. publ. Mar. 16, 2016).

Moreover, this Court is required to uphold the Commissioner's determination regarding subjective complaints if it is supported by substantial evidence.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2]  As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (internal quotation marks and citations omitted). Finally, in conducting its review, the Court is mindful the question is not whether the ALJ could have reasonably credited Plaintiff's complaints, but rather, "whether the ALJ was clearly wrong to discredit" them.  Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam).

### 2.    The ALJ's Evaluation Is Supported by Substantial Evidence

Plaintiff argues the ALJ's rejection of his subjective complaints is not supported by substantial evidence and not clearly articulated.  The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent" with the record.  R. 19.  In his decision, the ALJ expressly cited to and compared the objective medical evidence to Plaintiff's subjective complaints, including Plaintiff's testimony at the April 25th hearing.  R. 18-20.  The ALJ cited numerous reasons for discrediting Plaintiff's subjective complaints, including the lack of change in Plaintiff's prescription dosage, Plaintiff's daily activities, and lack of restrictions in treatment

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

records.  Id.  Based on the Court's review of the record, it is clear the ALJ considered the evidence and articulated clear and adequate reasons for discrediting Plaintiff's subjective complaints.  Indeed, both the ALJ's rejection of Plaintiff's subjective complaints and his RFC determination are based on a careful review of the entire record and supported by substantial evidence that includes the findings of the state agency psychologists, to whom the ALJ gave significant weight and upon whom the ALJ relied heavily in crafting his detailed and thoughtful RFC.  Plaintiff attempts to cast doubt on the ALJ's findings through a series of arguments that nitpick individual facts.  The Court disagrees with these arguments, as explained below, but even if these arguments were well-founded, they still only nip at the fringes of the ALJ's analysis and are insufficient to justify remand.

Plaintiff argues the ALJ mischaracterized the record of Plaintiff's complaints, but the Court is not persuaded by Plaintiff's interpretation of the facts.   Plaintiff argues the ALJ incorrectly stated Plaintiff's medications did not change with time, and the ALJ mischaracterized Plaintiff missing three of seven doctor's appointments.  The ALJ stated Plaintiff's medication "dosages" of Xanax and Prozac "remained essentially consistent since February 2016."  R. 19.  Then, the ALJ explained Prozac was increased after Plaintiff was shot in November 2017, and the Xanax prescription specified to take "as needed" at times.  Id.  Plaintiff's citation to two medications added after February 2016 does not mean the dosages of Xanax and Prozac did not remain consistent.  The ALJ correctly noted an essentially consistent dosage of Xanax and Prozac, which is consistent with the ALJ's finding that Plaintiff's mental limitations were not as severe as alleged.   Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not

disabling."); Duval v. Comm'r of Soc. Sec., 628 F. App'x 703, 709-11 (11th Cir. 2015) (per curiam) (affirming ALJ's reliance on medication controlling claimant's symptoms as basis for discounting both physician opinion and claimant's subjective complaints).

In a footnote, Plaintiff cites to an increase in his Xanax prescription in July 2016 as evidence Plaintiff's dosages have not remained the same since February, 2016, as the ALJ stated. However, upon closer review of the ALJ's statement, it appears he merely made a typographical error by stating February 2016 instead of July 2016, which is when Plaintiff's dosages of Xanax and Prozac increased. R. 300. When the ALJ stated Plaintiff's dosages of Xanax and Prozac remained essentially the same, he cited to pages in the record showing the change in July, 2016 and then remaining constant. R. 19, 300, 349-357. Further, based on the ALJ's overall review of the Plaintiff medical records, it is clear he was aware of Plaintiff's dosages such that his decision is not undermined by a mere typographical error.

Further, the ALJ correctly noted Plaintiff missed three doctor's appointments. Plaintiff argues one of the appointments was cancelled by Dr. Hayes and the other was due to Plaintiff's surgery for a gunshot wound two weeks prior. However, the record is clear Plaintiff missed three appointments separate from Dr. Hayes cancelling one. R. 349, 353, 355, 356. Although Plaintiff may be correct that Plaintiff missed one of the appointments because it was only two weeks after he was shot, the fact remains Plaintiff missed the appointment and inexplicably missed two others.

An ALJ may consider the level of treatment sought when considering subjective complaints and may draw an adverse inference so long as any explanation for failure to seek treatment is considered. Jarrell, 433 F. App'x at 814; Brown v. Comm'r of Soc. Sec., 425 F.

App'x 813, 817 (11th Cir. 2011) (*per curiam*).   Plaintiff relatedly argues the ALJ did not consider Plaintiff's agoraphobia and gunshot wound as reasons for Plaintiff missing the appointments.   However, the ALJ considered Plaintiff's agoraphobia by finding it was a severe impairment despite Plaintiff's history of taking a trip to the mountains and driving his children to see their mother.   R. 12-14, 18-20, 42, 350.   Further, the ALJ clearly considered Plaintiff's gunshot wound in light of his recitation of the medical evidence and subjective complaints surrounding the shooting.   R. 18; Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) ("'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (quoting Dyer, 395 F.3d at 1211)); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("[T]he ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits.").   Thus, the ALJ correctly noted Plaintiff's missed appointments and was allowed to draw an adverse inference from such.

Plaintiff next argues the ALJ failed to explain why Plaintiff earning more money in 2012 and 2015 was inconsistent with his panic attacks beginning in 2011 when the work did not amount to substantial employment.   Although perhaps not inconsistent on its face, the fact Plaintiff made more money after his panic attacks began implies Plaintiff's lack of employment was due to a desire not to work and not any disability, which is inconsistent with Plaintiff's argument that his medical impairments are the reason he cannot work.

Plaintiff further argues there is no merit to the ALJ's suggestion that Plaintiff attempted to appear more limited than he really was because of his inconsistent testimony about who was in the car with Plaintiff when he was shot.  See R. 20.  Plaintiff answered "yes" under oath to being alone in the car when he was shot an April 25th court hearing, but at a doctor's visit, Plaintiff stated his father was with him.  R. 36-37, 354.  Plaintiff is correct the ALJ's assertion Plaintiff was attempting to appear more limited is not supported by the evidence because Dr. Hayes's letter to the probation officer occurred before the shooting.  R. 257.  However, this one discrepancy does not undermine the ALJ's decision in light of the numerous facts supporting the ALJ's decision to discredit Plaintiff's subjective evidence.  Martin, 894 F.2d at 1529 (finding substantial evidence is "more than a scintilla, but less than a preponderance").

Plaintiff next argues the ALJ's conclusion that Plaintiff running out of his Xanax prescription prior to the refill point strongly suggests overuse or selling is not supported by substantial evidence.  Although Plaintiff is correct that it is reasonable to see an uptick in usage of his Xanax after being shot, especially when it was prescribed as needed at times, it is also entirely reasonable this usage can be considered overuse.  Further, the ALJ specifically cites to Plaintiff getting a prescription for a month's supply of Prozac and Xanax on November 16, 2017, which, as Plaintiff points out, equals sixty tablets twice per day and as needed for Xanax as an example, and needing a complete refill on all medications on November 29, 2017, only roughly two weeks later.  R. 20, 353-54.  Thus, it is entirely reasonable for the ALJ to conclude this "strongly suggests" over usage.

Plaintiff argues the ALJ's conclusion Plaintiff was more active than he presented is not supported by substantial evidence because the evidence is consistent with Plaintiff's reports that

he was limited to his home.  Plaintiff bases his argument, in part, on him not driving alone. However, as stated above in reference to Plaintiff being shot, Plaintiff answered in the affirmative when asked if he was driving alone when he was shot.  R. 36-37.  Also, despite Plaintiff's implication, the ALJ did not contend Plaintiff went to the mountains by himself, but rather, the ALJ merely stated Plaintiff was not simply confined to his home because he was willing to leave his home to go to the mountains.  R. 350.  Lastly, Plaintiff argues the fact his girlfriend at the time lived with him is not inconsistent with him not leaving the house as the ALJ contends.  However, when read in conjunction with the fact Plaintiff drove his children to school, there is an inherent inconsistency in Plaintiffs' story if Plaintiff drove his children despite his fear of leaving the house when his girlfriend is available at home.  Thus, the inconsistencies in Plaintiff's daily activities show there is substantial evidence supporting the ALJ's conclusion Plaintiff was more active than he alleged.

Lastly, Plaintiff argues the ALJ incorrectly stated there were no restrictions placed by a treating physician as might be expected given Plaintiff's allegations of totally disabling symptoms.  Plaintiff points to the letters by Dr. Hayes, but these letters cannot be given any special significance because they are conclusory and concerns an issue reserved to the Commissioner.  20 C.F.R. § 416.927(d).  Further, the ALJ specifically referenced the treatment records not containing any restrictions as the source of the inconsistency.  R. 20.  Thus, Dr. Hayes's letters on an issue reserved to the Commissioner, which contained conclusory information not included in the treatment records, does not defeat the ALJ's point.

In sum, the ALJ properly contrasted Plaintiff's subjective complaints with the objective medical evidence and his other activities of daily living in assessing his claimed level of

impairment.  A claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim.  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Plaintiff may disagree with the ALJ's interpretation of the evidence, but this Court's job is not to re-weigh the evidence.  See Moore, 405 F.3d at 1211.  Substantial evidence supports the ALJ discrediting Plaintiff's subjective complaints, and Plaintiff's arguments form no basis for reversal or remand.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 4th day of May, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA